# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# ABINGDON DIVISION

| | |
|---|---|
| **SUN LIFE ASSURANCE COMPANY OF CANADA**, | ) ) ) |
| Plaintiff, | ) Case No. 1:06CV00078 ) |
| v. | ) **OPINION AND ORDER** ) ) |
| **ETHEL ELSIE GROSE, ET AL.**, | ) By: James P. Jones ) Chief United States District Judge ) |
| Defendants. | ) |

*David E. Constine, III, and Brenna K. Newman, Troutman Sanders LLP, Richmond, Virginia, for Plaintiff; Roger W. Mullins, Roger W. Mullins, PLLC, Tazewell, Virginia, for Defendants Ethel Elsie Grose and Eddie H. Grose.*

In this interpleader action, the defendants have objected to a claim on behalf of the stakeholder for its attorneys' fees. I will allow attorneys' fees, but in a lesser amount than requested.

I

The plaintiff Sun Life Assurance Company of Canada ("Sun Life") filed the present interpleader action, alleging that it insured the life of Billy Ray Grose, who died on August 28, 2005, through a group policy of insurance provided by Grose's employer. The defendants Ethel Elsie Grose (also known as Ethel Farmer Grose) and Eddie H. Grose are the mother and father of the deceased. The third defendant,

Sandra K. Beeson-Grose, was his wife. Upon enrolling in the group policy on May 21, 2004, Billy Ray Grose named his wife as the primary beneficiary but on November 12, 2004, executed a form changing the primary beneficiaries to his mother and father.

After Grose's death in a motorcycle accident, Sun Life received a formal claim form from his mother dated September 3, 2005, seeking the proceeds of the policy. Sun Life also received a letter dated October 18, 2005, from an attorney for the widow stating that Beeson-Grose "questions the beneficiary designation [of the parents]." (Compl. Ex. E.) Thereafter, Sun Life received a personal letter from Beeson-Grose dated March 11, 2006, stating that "I know in my heart for whatever reason a change [in beneficiary] was made, that my husband had no intention of excluding his only child, our son . . . . My husband loved that child with all of his heart. I'm making this claim because there is also, large amounts of medical bills that need to be paid." (*Id.* Ex. F.) In response to that letter, a representative of Sun Life wrote a letter dated March 27, 2006, to Grose's mother and to his widow reciting the facts and stating:

> In view of the foregoing, Sun Life believes that each of you have asserted conflicting claims for the proceeds due under the Policy on the life of Billy Ray Grose. Sun Life will give each of you thirty (30) days from the date of this letter to resolve this matter between yourselves, if you so choose. If I do not received notice by April 27, 2006 that you

have agreed to the disposition of the Policy proceeds, we will file a lawsuit to implead the funds into court.

(Resp. Mot. Attorney Fees Ex. 3.)

No apparent agreement was reached, and Sun Life filed the present action on July 20, 2006, asserting jurisdiction under Title I of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C.A. §§ 1001-1144 (West 1999 & Supp. 2006) and the Federal Interpleader Act, 28 U.S.C.A. § 1335 (West). Sun Life has paid into court the amount of $41,175.46, representing the face amount of the policy plus interest, and requested its discharge and dismissal from the case, along with payment from the fund of its attorneys' fees of $4,814 and costs of $800, totaling $5,614. The defendants do not object to the discharge and dismissal of Sun Life, but object to the payment of attorneys' fees and costs from the fund.

The widow did not timely respond to the suit and on November 3, 2006, the clerk entered a default. *See* Fed. R. Civ. P. 55(a). On November 30, 2006, the clerk received and filed a letter from Beeson-Grose dated November 28, 2006, in which she stated:

> I am writing to let you know of my intent. I know it is late, but I am proceeding without counsel. . . . It is my belief that my husband was not of sound mind when he made these changes to his Insurance policy. He was sick and on medications and also, as it is well known, abusing Alcohol, which claimed his life. My husband, Billy Ray Grose, was not well and was acting out of character in changing the beneficiary to his

> mother, Ethel Elsie Grose. It is a fact that Billy and his mother, Ethel Elsie, have a long history of not getting along. My belief is that his mother used his poor state of mind to manipulate Billy Grose, into changing the beneficiary, allowing him to believe that she would take care of his son. . . .

(Beeson-Grose letter 11/28/06.) In response to the motion for attorneys' fees, the defendants have filed documents showing that the decedent and his wife were engaged in custody and support litigation as to the child at the time of his death and that the decedent's mother had requested DNA testing on the child, presumably to contest paternity.

II

The court has the discretion to award attorneys' fees and costs to the stakeholder in an interpleader action. *Powell Valley Bankshares, Inc. v. Wynn*, No. 2:01CV00079, 2002 WL 728348, at *1 (W.D. Va. Apr. 11, 2002). But such fees and costs are not granted as a matter of course. *Weber v. Rivanna Solid Waste Auth.*, No. 3:98CV00109, 2001 WL 1516737, at *2 (W.D. Va. Nov. 21, 2001). They may be denied where the conflicting claim is one that arises in the ordinary course of the stakeholder's business and the stakeholder had the duty to investigate the claim's legitimacy before filing suit. *Id.*; *see also* Franklin L. Best, Jr., *Reforming*

- 4 -

*Interpleader: The Need for Consistency in Awarding Attorneys' Fees*, 34 Baylor L. Rev. 541-61 (1982).

While the defendants argue that the claim made by Beeson-Grose to the proceeds of the life insurance policy was unmeritorious and thus did not justify the filing of the interpleader action, I find that there was sufficient basis for Sun Life's decision to file suit. It is true that even amplified by Beeson-Grose's recent letter to the court, her claim is thin. However, she was the widow of the decedent and his prior primary beneficiary and was represented by an attorney, who wrote Sun Life that she questioned the subsequent beneficiary designation. Under these circumstances, it is not inequitable to reimburse Sun Life for bringing an action to resolve the matter.

The "test for determining attorneys' fees in an interpleader action is less rigorous than the more elaborate factors used to consider fee awards in civil rights suits and other contexts. . . . In an interpleader action, the broad rule is reasonableness." *Powell Valley Bankshares, Inc.*, 2002 WL 728348, at *2 n.2. In the normal interpleader action, the attorneys' fees awarded will be "relatively modest, in as much as all that is necessary to bring an interpleader action is the preparation of a petition, the deposit of the contested funds into court, service on all the claimants, and the preparation of an order discharging the stakeholder." *Reliastar Life Ins. Co.*

*of N.Y. v. LeMone*, No. 7:05CV00545, 2006 WL 1133566, at *2 (W.D. Va. Apr. 25, 2006).

While Sun Life should be reimbursed from the fund for reasonable attorneys' fees, I find the full amount requested here should be denied. The request includes time spent by Sun Life's attorneys in relation to a counterclaim filed by the decedent's father and mother, which services did not relate to the ownership of the fund.[1] More importantly, in light of the small amount of the insurance proceeds and the uncomplicated nature of the dispute, it would be inequitable to require the beneficiaries to bear the full amount of Sun Life's attorneys' fees.

Accordingly, I will allow Sun Life a fee of $2,400, together with its costs of $800, for a total of $3,200. It is **ORDERED** that the Motion of Sun Life Assurance Company of Canada for an Award of Attorney Fees and Costs Out of the Funds Deposited into the Court's Registry [37] is GRANTED IN PART and DENIED IN PART. The clerk is directed to pay from the amount previously deposited into the court's registry in this case the sum of $3,200 to the order of Troutman Sanders LLP for the benefit of Sun Life Assurance Company of Canada.[2]

---

[1] The counterclaim has since been dismissed by agreement.

[2] A separate order will be entered discharging Sun Life.

- 6 -

ENTER: December 20, 2006

/s/ JAMES P. JONES
Chief United States District Judge